**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LORETTA MURPHY** | **CIVIL ACTION** |
| **v.** | **NO. 19-5901** |
| **HOTWIRE COMMUNICATIONS, LLC** | |

**MEMORANDUM**

**Baylson, J.**                                                                                                                         **May 5, 2020**

## I.   INTRODUCTION

Plaintiff Loretta Murphy alleges that she was harassed and discriminated against while she worked for Defendant Hotwire Communications, LLC ("Hotwire"), and when she complained about how she was treated, Hotwire terminated her employment.  Plaintiff filed a Complaint, alleging three counts of harassment, discrimination, and retaliation against Hotwire:

1. **Count I**:  sexual harassment, discrimination, and retaliation in violation of Title VII;

2. **Count II**:  harassment, discrimination, and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"); and

3. **Count III**:  harassment, discrimination, and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA").

(ECF 1, Compl. ¶¶ 76–92.)  Before this Court is Hotwire's Motion to Dismiss.  For the reasons stated below, Hotwire's Motion will be denied.

## II.   FACTUAL AND PROCEDURAL HISTORY

The facts as alleged in the Complaint are as follows.  Hired as an Assistant General Counsel at Hotwire in 2007, Plaintiff began reporting to Jonathan Bullock when he became General Counsel in 2013.  (Compl. ¶¶ 20, 23.)  Within a year, Bullock began showing bias and favoritism towards the male attorneys on the legal team.  (Compl. ¶ 25.)  For example, Bullock planned a

dinner with the male attorneys, and only invited Plaintiff after the other attorneys suggested he should. (Compl. ¶ 26.) Plaintiff was also the only attorney excluded from a lunch with the rest of the legal team, and was generally excluded from updates about cancelled meetings and calls. (Compl. ¶¶ 27–29.)

In April of 2017, Hotwire distributed its internal newsletter, which included an article mourning the firing of former Fox News anchor Bill O'Reilly entitled "O'Reilly Out After 20 Years! Leaving Many Distraught." (Compl. ¶¶ 31–32.) Within the article was a photograph of a shrine in Executive Vice President Carl Lender's office, which lamented O'Reilly's firing from Fox News following multiple accusations of sexual harassment. (Compl. ¶ 33.) The newsletter commemorated O'Reilly's accomplishments, suggested his firing was merely a financial decision on Fox News's part, and reported that many executive and management employees at Hotwire were saddened by O'Reilly's firing. (Compl ¶¶ 35–38.) Plaintiff understood the shrine and the comments in the newsletter to be discriminatory against females, and numerous female employees complained to Plaintiff about the discriminatory nature of the O'Reilly newsletter. (Compl. ¶¶ 39–41.) Plaintiff made complaints to the new General Counsel, Jonathan Glicksman, but her complaints went unaddressed. (Compl. ¶¶ 42–45.)

A few months later, Plaintiff learned that, although she was the oldest and most experienced Assistant General Counsel on the legal team, she was being paid less than the other Assistant General Counsels at Hotwire. (Compl. ¶¶ 47–50.) Plaintiff filed a Charge of discrimination and hostile work environment with the EEOC, and notified Hotwire President Kristin Johnson Karp. (Compl. ¶ 51–52.) After Plaintiff filed her Charge, Karp became dismissive of Plaintiff, ignored her, and refused to acknowledge her. (Compl. ¶ 54.)

Throughout 2017, a number of Plaintiff's colleagues in the legal department left the company. (Compl. ¶ 55.) All of the attorneys hired as replacements were significantly younger than Plaintiff. (Compl. ¶¶ 56–59.) Shortly after the last of these hires were made, Plaintiff's employment was terminated, but all the new hires kept their jobs. (Compl. ¶¶ 60–61.) At the time her employment with Hotwire ended, Plaintiff was sixty-two years old. (Compl. ¶ 63.)

Plaintiff filed a Complaint in this Court. (ECF 1.) Hotwire filed a Motion to Dismiss, (ECF 8), Plaintiff filed a Response in Opposition, (ECF 9), and Hotwire filed a Reply, (ECF 13.)

## III.   LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

## IV. PARTIES' CONTENTIONS

### A. Hotwire

Hotwire contends that to the extent Plaintiff's claims are based on her being excluded from lunch or dinner events, those events are time-barred. (MtD 14–17.) But even considering these incidents, Hotwire argues that the events underlying Plaintiff's claims of sexual harassment are not severe or pervasive enough to have created a hostile work environment. (MtD 17–20; Def.'s Reply 4–6.)

Hotwire also contends that Plaintiff's sexual harassment claims fail because Hotwire has multiple women in leadership positions at the company, and, with the exception of the O'Reilly newsletter, Plaintiff did not make any internal complaints about the events she alleges constituted sexual harassment. (MtD 20.) As to Plaintiff's claims related to the O'Reilly newsletter, Hotwire contends that those claims should be dismissed because Hotwire took corrective action as demonstrated in its EEOC Position Statement. (MtD 20–21.)

Hotwire further argues that Plaintiff's age discrimination claims should be dismissed because the Complaint does not allege that she was harassed because of her age. Hotwire asserts that Plaintiff failed to allege who replaced her, and she did not identify any younger, similarly situated employees who were paid more than her. (MtD 25–26.) Again referencing its EEOC Position Statement, Hotwire also contends that all of Plaintiff's proposed comparators are not similarly situated. (MtD 26–27.)

In addition, Hotwire argues that Plaintiff fails to allege that the protected activity she engaged in caused her dismissal because the gap between her EEOC Charge and dismissal does not suggest any causation. (MtD 27–29.) Hotwire posits that Plaintiff was actually dismissed because the company relocated to Florida, and points to Plaintiff's Second Amended Charge of

Discrimination in which she apparently acknowledged that her employment was terminated for that reason.  (MtD 29–30.)

Finally, Hotwire contends that Plaintiff's Complaint is an impermissible shotgun pleading because each Count incorporates every preceding allegation.  (MtD 22–25.)  Similarly, Hotwire argues that by incorporating earlier Counts into later Counts, Plaintiff seeks punitive damages under the ADEA and the PHRA, and those causes of action do not provide for punitive damages.  (MtD 22 n.6; Def.'s Reply 2.)

### B. Plaintiff

Plaintiff argues that the majority of Hotwire's argument are inappropriate on a motion to dismiss, and should be deferred until summary judgment.  According to Plaintiff, at this stage Hotwire cannot rely on its own EEOC Position Statement to demonstrate corrective action, or the content of Plaintiff's Second Amended Charge of Discrimination to contradict allegations in the Complaint.  (Pl.'s Opp'n 6–9, 18 n.4.)

Plaintiff clarifies that her sexual harassment claims are primarily based on the O'Reilly newsletter, not the events that Hotwire argues are time-barred.  The untimely events merely serve as background evidence for her claim, which she did not need to report to make out a valid hostile work environment claim.  (Pl.'s Opp'n 10–12, 16–17.)

Overall, Plaintiff contends that the facts concerning the context and aftermath of the O'Reilly newsletter state a plausible claim of a sexual harassment creating a hostile work environment.  Plaintiff asserts that whether Hotwire's conduct was pervasive enough to create a hostile work environment is a matter for summary judgment, and cannot be negated simply by placing women in leadership positions at the company.  (Pl.'s Opp'n 12–17.)

Plaintiff also argues that establishing a prima facie case of age discrimination is not required at the motion to dismiss stage, and contends that the circumstances of her dismissal as alleged in the Complaint are enough to infer that she was discriminated against because of her age. (Pl.'s Opp'n 17–21.)  As to Hotwire's charge that Plaintiff failed to allege causation, Plaintiff contends that the facts in the Complaint show a pattern of antagonism following her protected activity, and that causation can be inferred from that pattern.  (Pl.'s Opp'n 21–23.)

Finally, Plaintiff contends that the Complaint is not a shotgun pleading, and adequately puts Hotwire on notice of her claims.  (Pl.'s Opp'n 23.)  The Complaint clarifies which damages claims relate to which counts, and Plaintiff asserts that striking any claims for punitive damages is premature at this time.  (Pl.'s Opp'n 24 n.6.)

## V. DISCUSSION

### A. Hostile Work Environment

A claim for sexual harassment resulting in a hostile work environment is comprised of the following elements:

> 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

Moody v. Atlantic City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)).  At the pleading stage, a plaintiff is not required to establish each element, but instead "need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Assocs. Ltd., No. 08-207, 2008 WL 2312671, at *4 (W.D. Pa. 2008)).

Hotwire contends that the Complaint does not allege severe or pervasive discrimination. "Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Here, Plaintiff alleges that she was excluded from work events and social gatherings with colleagues on account of her sex, that Hotwire circulated a newsletter that mourned the firing of a prominent figure accused of sexually harassing multiple women, and endorsed a shrine devoted to that person. (Compl. ¶¶ 25–29, 31–39.) While Plaintiff's exclusion from events may not be actionable in their own right because they are untimely, they provide context for Plaintiff's overall claim of a hostile work environment. Drawing all inferences in favor of Plaintiff, the Complaint pleads enough facts to adequately allege severe or pervasive hostility.

Hotwire also contests whether the Complaint alleges *respondeat superior* liability because Plaintiff only reported one of the alleged incidents of harassment, and Hotwire has women in leadership positions. *Respondeat superior* liability exists in connection with a hostile work environment claim if:

> (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship.

Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) (citing Bouton v. BMW of North Am., Inc., 29 F.3d 103, 106 (3d Cir. 1994)). "Thus if the employer knew or should have known

of the harassment and failed to take prompt remedial action, it is liable under Title VII." Id. (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990)).

Here, the Complaint alleges that Plaintiff complained about the O'Reilly newsletter to General Counsel Glicksman, and those complaints went unaddressed. (Compl. ¶¶ 42–44.) In addition, Plaintiff alleges that General Counsel Bullock showed bias and favoritism towards male employees. (Compl. ¶¶ 25–27.) The latter alleges behavior that was within the scope of employment, and thus did not need to be reported. Taken together, these allegations provide an adequate foundation for imposing *respondeat superior* liability.

Hotwire urges this Court to consider its EEOC Position Statement in deciding whether it took remedial action after receiving complaints about the O'Reilly newsletter. The Position Statement is essentially Hotwire's answer to Plaintiff's EEOC Charge. But Plaintiff's claims are not based on Hotwire's Position Statement, and the Position Statement is not relied upon or integral to the Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.) (holding that a district court can consider a document outside of the pleadings on a motion to dismiss if the document is "*integral to or explicitly relied* upon in the complaint" (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, the Court will not consider it when deciding Hotwire's Motion to Dismiss. Relying only on the allegations in the Complaint, Plaintiff has alleged that Hotwire did not address her complaints concerning the O'Reilly newsletter. (Compl. ¶ 44.)

As to Hotwire's contention that Plaintiff's sex discrimination claim fails because Hotwire has women in leadership positions, the Supreme Court has rejected this argument, holding that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are

of the same sex." Onacle v. Sundwoner Offshore Servs., Inc., 523 U.S. 75, 79 (1998). The Complaint sufficiently alleges *respondeat superior* liability. Hotwire's Motion to Dismiss Plaintiff's claims of sexual harassment resulting in a hostile work environment will be denied.

### B. Age Discrimination

Plaintiff alleges that, because of her age, she was paid less than other attorneys and was ultimately dismissed from her position at Hotwire. To state a claim for unequal pay, Plaintiff was required to plead facts tending to show that "younger employees were compensated at higher rates for substantially equivalent work." Tumolo v. Triangle Pac. Corp., 46 F. Supp. 2d 410, 412 (E.D. Pa. 1999) (Ludwig, J.) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996)). In her Complaint, Plaintiff alleges that, despite being more qualified and experienced, and despite having a longer tenure with Hotwire, she was paid less than the younger attorneys in the legal department. (Compl. ¶¶ 47–50.) This adequately pleads a claim for age discrimination based on unequal pay.

The elements of Plaintiff's claim that she was dismissed from her position as Assistant General Counsel because of her age are:

> first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.

Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)). If a plaintiff is not directly replaced, she can satisfy the fourth prong by providing facts which, "if otherwise unexplained," would tend to show that the adverse employment action was "more likely than not based on the consideration of

impermissible factors." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).

Plaintiff does not allege that she was directly replaced. Instead, Plaintiff alleges that, as her colleagues in the legal department left the company, Hotwire replaced them with attorneys who were significantly younger than Plaintiff, (Compl ¶¶ 55–59), and when Plaintiff was dismissed from her position, all of the younger attorneys kept their job despite Plaintiff being more qualified and having more experience, (Compl. ¶¶ 60–64.) These allegations support an inference that Hotwire favored younger workers over older ones in its hiring decisions. At this stage, Plaintiff has pleaded enough facts that, if left unexplained, state a claim for age discrimination based on her dismissal.

Hotwire asks this Court to consider Plaintiff's Second Amended Charge of Discrimination ("SACD") to negate Plaintiff's allegations of causation. Plaintiff relied on the SACD in her Complaint, so it can be considered in deciding the Motion to Dismiss. See In re Burlington Coat Factory, 114 F.3d at 1426. But the SACD does not negate any of Plaintiff's allegations because it only recites what Hotwire told Plaintiff when it dismissed her—that the company was relocating to Florida. (MtD Ex. B.) Viewing the SACD in the light most favorable to Plaintiff, Hotwire's purported justification in the SACD adds nothing to the causation analysis at this stage. It is only Hotwire's assertion, which is an issue of fact that cannot be resolved on a motion to dismiss. Accordingly, Hotwire's Motion to Dismiss Plaintiff's age discrimination claims will be denied.

### C. Retaliation

Plaintiff alleges that she was retaliated against in violation of Title VII, the ADEA, and the PHRA. The elements of a retaliation claim are:

> (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the

protected activity; and (3) that there is a causal connection between the protected activity and the adverse action.

Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)); see also Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006).

Hotwire argues that Plaintiff has failed to plead a causal connection between her protected activity and her dismissal. In the absence of a close temporal proximity, a plaintiff can demonstrate a causal link through "a pattern of antagonism in the intervening period." Woodson v. Scott Paper Co., 109 F.3d 913, 920–21 (3d Cir. 1997). Here, Plaintiff alleges that after she complained about the O'Reilly newsletter and filed a complaint with the EEOC, President Karp became dismissive of her, ignored her, and refused to greet or look at her. (Compl. ¶ 54.) Based on these allegations, this Court finds there is a reasonable expectation that discovery will reveal evidence of a causal connection between Plaintiff's protected activity and her dismissal. Hotwire's Motion to Dismiss Plaintiff's retaliation claims will be denied.

### D. Shotgun Pleading

Hotwire contends that the Complaint is an impermissible shotgun pleading. There are generally four types of complaints that can be considered shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (Robreno, J.) (quoting Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321–23 (11th Cir. 2015)). "The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another,

11

and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" Id. (quoting Weiland, 792 F.3d at 1323).

The Complaint in this case is relatively straight-forward. The factual allegations are pleaded with enough detail to establish the factual background of the claims, and each count specifies that Plaintiff is alleging harassment, discrimination, and retaliation under Title VII, the ADEA, and the PHRA respectively. Thus, Plaintiff's Complaint gives Hotwire adequate notice of the claims and the grounds upon which they rest. Hotwire's Motion to Dismiss will be denied.

## VI. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss will be denied. An appropriate Order follows.

O:\CIVIL 19\19-5901 Murphy v Hotwire Communications LLC\19cv5901 Memo re Motion to Dismiss.docx